# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

HARDLE ENNIS, JR.,                           )
                                             )
                        Plaintiff,           )
                                             )
v.                                           )         **Case No. 13-CV-0055-CVE-FHM**
                                             )
PATRICK R. DONAHOE,                          )
Postmaster General,                          )
United States Postal Service,                )
                                             )
                        Defendant.           )

## OPINION AND ORDER

Now before the Court are Defendant Patrick R. Donahoe's Motion to Dismiss or, in the

Alternative, Motion for Summary Judgment and Brief in Support (Dkt. # 15) and Defendant's

Motion for Hearing (Dkt. # 27).  Defendant asks the Court to dismiss the case because plaintiff was

not eligible to take leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

(FMLA); because plaintiff was terminated for violating a last chance agreement and not for, or in

retaliation for, taking FMLA leave; and because plaintiff has failed to serve the United States in

compliance with Fed. R. Civ. P. 4(i).  Plaintiff responds that he was eligible for FMLA leave, that

defendant is equitably estopped from denying that plaintiff was entitled to FMLA leave, that

there is a factual dispute as to the cause of plaintiff's termination, and that plaintiff should be given an

extension of time to properly serve the United States.

## I.

Plaintiff was employed by the United States Postal Service (USPS) from May 23, 1997, to

January 28, 2011.  Dkt. # 2, at 1; Dkt. # 15, at 2.  In 2011, he worked as a mail processing clerk

during the night shift at the Tulsa Processing and Distribution Center.  Dkt. # 15, at 2; Dkt. # 20, at

18.  "Plaintiff has suffered from diabetes since 1997 and has received an FMLA certification for more than a decade."  Dkt. # 15, at 2; see also Dkt. # 15-2.  Between 2006 and 2009, plaintiff was granted FMLA leave "numerous times."  Dkt. # 22-1, at 1.

Defendant alleges that plaintiff has "incurred numerous non-FMLA, unapproved, unscheduled absences" and that those absences "led to at least two suspensions and one prior notice of removal."  Dkt. # 15, at 2; see also Dkt. # 15-3, at 3.  In May 2010,[1] plaintiff entered into a last chance agreement with USPS.  Dkt. # 20, at 18.  The last chance agreement states that plaintiff "will have no more than two occurrences of unscheduled absences during any rolling 90-day period beginning with the signing of this agreement.  Specifically, three unscheduled absences within 90 days of each other will constitute a breach of this agreement."  Dkt. # 15-4, at 2.  An "occurrence" is defined as "a. Any absence from duty of eight hours or less in duration.  b. Any continuous absence from duty up to, but not exceeding 16 hours."  Id.  In the agreement, plaintiff acknowledged that any breach of the agreement by plaintiff would result in a notice of removal.  Id. at 1-2.

The last chance agreement did not characterize leave under the FMLA as an unscheduled absence.  Dkt. # 20, at 19; Dkt. # 22, at 9.[2]  Additionally, plaintiff states that he had previously taken

_____

[1]     There is minor disagreement as to exact date the last chance agreement was entered into.  Compare Dkt. # 15, at 2 ("Eventually, Plaintiff and USPS entered into a Last Chance Settlement Agreement on May 19, 2010."), with Dkt. # 20, at 18 ("On May 25, 2010, I entered into a Last Chance Settlement Agreement with the Defendant . . . .").  While the agreement was dated May 19, 2010, it was signed on May 25, 2010.  Dkt. # 15-4, at 1-3.

[2]     The last chance agreement defines "unscheduled absence" as "[a]ny absence not requested **and** approved 24 hours in advance of [plaintiff's] scheduled reporting time, and includes, but it is not limited to, tardiness, short tour, emergency sick or annual leave, leave without pay (LWOP), and failure to report/remain as directed or scheduled for overtime or holiday work."  Dkt. # 15-4, at 2 (emphasis in original).

intermittent FMLA leave,[3] and that those absences were not considered to be unscheduled.  Id.

Plaintiff states that, during his employment, three consecutive days of absences were considered to

be one occurrence and that he "had numerous absences of three consecutive days which were

considered one occurrence."  Id.  This final contention is disputed by Gail Thomas.  Dkt. # 22-1, at

1.  Gail Thomas is a safety specialist employed by USPS.  Dkt. # 22-1, at 1.  She has worked at

USPS since 1985.  Id.  In January 2011, she was the FMLA coordinator and employer representative

for the USPS Tulsa office, a position she had held since 2005.  Id.  Thomas states that she is "not

aware of any occasion where [plaintiff's] absences of three consecutive days were treated as one

occurrence for the purpose of attendance" and that she is "not aware of any occasion where a

consecutive three-day absence by any USPS employee in the Oklahoma District was considered one

occurrence for the purposes of attendance."  Id. at 1-2.  She further states that, to her knowledge,

"USPS does not have any practice or policy to treat consecutive three-day absences as one

occurrence for the purposes of attendance."  Id. at 2.

    Plaintiff states that on January 4, 2011, he contacted Thomas to inquire about his FMLA

leave eligibility.  Dkt. # 20, at 19.  Plaintiff states that Thomas informed him that a notice of

eligibility would arrive in the mail and that the notice would provide a date upon which he would

be eligible for FMLA leave.  Id.  Thomas allegedly informed him that he "would have the hours and

be eligible" for FMLA leave on the date provided in the notice.  Id.  Thomas states that she did not

speak to plaintiff by telephone on January 4, 2011, and that she did not provide him with any of the

information that he has alleged she provided him.  Dkt. # 22-1, at 3.

---

[3]    "Intermittent leave is FMLA leave taken in separate blocks of time due to a single qualifying
reason."  29 C.F.R. § 825.202.

The January 5th notice of eligibility states that plaintiff was not eligible for FMLA leave, because he had not met the FMLA's 1,250 hours-worked requirement. Dkt. # 15-5, at 1. The notice states that he had worked only 1,225 hours. Id. The notice further states, "ESTIMATED DATE OF ELIGIBLE[sic]-01-15-2011." Id. Thomas states that this estimate assumes that an "employee will have no further absences prior to the estimated date." Dkt. # 22-1, at 2. The notice also states that if plaintiff's leave qualified as FMLA leave, he had the "right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as . . . a fixed leave year based on The Postal Leave [sic] begining [sic] on the 1st full Pay Period of the Calender [sic] Year." Dkt. 15-5, at 2.

Plaintiff did not attend work on the nights of January 4, 5, or 6, 2011,[4] but he alleges that the three missed nights were treated as a single occurrence by USPS. Dkt. # 20, at 19. He requested that the absences be treated as leave under the FMLA, but his request was denied in writing because he had allegedly not worked the necessary 1,250 hours during the previous twelve months. Id. Plaintiff alleges that the notice of denial he received stated that he had worked only 1,225 hours and stated that his estimated date of eligibility was January 15, 2011. Id.

---

[4]    Plaintiff's complaint lists the absences as January 5, 6, and 7, 2011. Dkt. # 2, at 2. This is likely because plaintiff worked the night shift; his work would begin the night of one day and end the morning of the next. Plaintiff's complaint is referring to these absences based on the day he would have ended work. Defendant's records also record dates worked or missed in the same manner. See e.g., Dkt. # 15-1. All dates related to plaintiff's employment will refer to the night that he began, or should have begun, work.

Plaintiff states that he "missed work" the nights of January 12, 13, and 14, 2011.[5] Dkt. # 20, at 20.  Plaintiff believes this constituted a second occurrence under the terms of the last chance agreement.  Id.  Plaintiff states that he worked the nights of January 7, 10, 11, 17, and 18, 2011.  Id. Plaintiff's scheduled nights off were January 8, 9, 15, and 16, 2011.  Id. at 18.  Plaintiff also states that he worked a total of forty hours between January 5 and January 19, 2011.  Id. at 20.

Plaintiff states that he contacted Thomas on January 15, 2011, to check on his FMLA status. Id.  Plaintiff states that Thomas informed him that he "would be eligible after the date on the January 5 FMLA Notice and that [he] could rely on that."  Id.  Thomas states that she did not speak to plaintiff by telephone on January 15, 2011, and did not provide him with any of the information that he alleged she provided him.  Dkt. # 22-1, at 4.

---

[5]     Defendant's records show that plaintiff would not have been required to work the night of January 14 because he was on holiday leave, likely for Martin Luther King Day.  Dkt. # 15-6, at 1; Dkt. # 25-1, at 1 (defendants's records are offset by one day, i.e., they refer not to the date of the night which plaintiff worked, but the date of the next morning).  Defendant's records show that plaintiff did not work the night of January 11, 2011.  Dkt. # 25-1, at 1; Dkt. # 15-7, at 2.  Despite plaintiff's use of the phrase "missed work," this Court will assume for the purposes of this motion that plaintiff was absent the nights of January 12, 13, and 14, but that the absence on January 14 was excused as holiday leave.

5

Plaintiff claims that he was ill from January 19 to January 21, 2011, and was unable to attend work.[6] Dkt. # 2, at 2; see also Dkt. # 20, at 20.  Plaintiff states that, on each of those dates, he called an automated telephone number to report his absence and claim it as FMLA leave.  Dkt. # 20, at 20. He states that the automated telephone service did not inform him of his FMLA eligibility status. Id.

Plaintiff states that USPS terminated his employment on January 28, 2011, due to his unexcused absences in violation of the last chance agreement.  Dkt. # 2, at 2.  However, plaintiff alleges that he was eligible for FMLA leave as of January 19, 2011, and that his absences on January 19, 20, and 21, 2011, were covered by the FMLA.  Id.  Plaintiff alleges that, because of the hours he worked between January 7 and January 19, 2011, he satisfied the FMLA's 1,250 hour requirement.  Id.

After his termination, plaintiff states that he received another FMLA notice.  Dkt. # 20, at 21.  The notice was dated January 21, 2011.  Dkt. # 15-8, at 1.  The notice states that plaintiff was not eligible for FMLA leave, because he had not met the FMLA's 1,250 hours-worked requirement. Id.  The notice states that he had worked only 1,169 hours.  Id.  The notice further states, "ESTIMATED DATE OF ELIGIBILITY - MARCH OF 2011."  Id.  The notice also states that if

---

[6]     Defendant's records show that plaintiff worked the night of January 21, 2011.  Dkt. # 15-7, at 5.  However, plaintiff consistently refers to a three-day absence from January 19 to 21, 2011.  See e.g., Dkt. # 20, at 4.  Plaintiff must be referring to missing the nights of January 19, 20, and 21, because he claims to have worked the night of January 18 (and therefore the morning of January 19).  Id. at 20.  Defendant's records also refer to a three-day absence from January 19 to 21, 2011; however, defendants's records are offset by one day, i.e., they refer not to the date of the night which plaintiff worked, but the date of the next morning. See e.g., Dkt. # 15-10, at 1.  For the purpose of this motion, this Court will view the evidentiary materials in the light most favorable to the plaintiff and assume that plaintiff worked the nights of both January 18 and 21.

his leave qualified as FMLA leave, plaintiff had the "right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as . . . a fixed leave year based on The Postal Leave [sic] begining [sic] on the 1st full Pay Period of the Calender [sic] Year." Id. at 2.

Defendant states that "[o]n February 3, 2011, USPS issued Plaintiff a Notice of Removal for Violation of the Last Chance Settlement Agreement." Dkt. # 15, at 5. The notice of removal states that plaintiff was removed from his position for violating the last chance settlement agreement. Dkt. # 15-10, at 1. On February 11, 2011, the president of the Tulsa Area Local American Postal Workers Union sent a letter to USPS stating that the union had reviewed plaintiff's attendance information, concluded that the last chance agreement was violated, and would not file a grievance. Dkt. # 15-11, at 1.

Plaintiff filed this case on January 28, 2013, and served Donahoe on February 5, 2013. Dkt. # 6, at 1; Dkt. # 8, at 1. Defendant filed a motion to dismiss for failure to serve the United States in compliance with Fed. R. Crim. P. 4(i) and plaintiff filed a motion for extension of time to effect service of process. Dkt. # 6; Dkt. # 7. The Court denied defendant's motion to dismiss and granted plaintiff's motion for extension of time to August 30, 2013, to comply with the service requirements of Rule 4(i). Dkt. # 12. The United States Attorney for the Northern District of Oklahoma was served on July 16, 2013. Dkt. # 13. However, the United States Attorney General was not served until November 12, 2013.

## II.

Defendant has moved to dismiss plaintiff's claims, or in the alternative, for summary judgment. Dkt. # 15. Having reviewed the parties' submissions, the Court finds that defendant's motion to dismiss, to the extent it seeks dismissal for failure to state a claim under Fed. R. Civ. P.

12(b)(6), should be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56, but should be treated as motion to dismiss in all other respects.  Defendant's motion put plaintiff on notice that it was seeking summary judgment, and no additional notice to plaintiff is required for the Court to consider evidence outside of the pleadings when ruling on defendant's motion.  <u>See Marquez v. Cable One, Inc.</u>, 463 F.3d 1118, 1121 (10th Cir. 2006).  In addition, plaintiff's response demonstrates that he was aware defendant's motion might be treated as one for summary judgment, because he attached evidentiary materials to his response.  <u>Bldg. & Constr. Dep't v. Rockwell Int'l Corp.</u>, 7 F.3d 1487, 1496 (10th Cir. 1993) (notice requirement satisfied when moving party states it is seeking summary judgment and opposing party responds by attaching evidence outside the pleadings to the response).  Finally, plaintiff has not requested a continuation pending completion of discovery, filed a Rule 56(f) affidavit, nor informed this Court in his pleadings that further discovery would be necessary or even helpful.  <u>See Marquez</u>, 463 F.3d at 1121.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Kendall v. Watkins</u>, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  <u>Id.</u> at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

Defendant's motion seeks dismissal based upon Fed. R. Civ. P. 12(b)(4) and Fed. R. Civ. P. 12(b)(5), arguing that plaintiff's claims should be dismissed because he failed to properly serve the government within 120 days of filing the complaint.  The Federal Rules of Civil Procedure require a plaintiff to serve each defendant within 120 days of filing the complaint, or the court must dismiss the plaintiff's claim against any defendant who has not been served or permit the plaintiff to serve the defendant within a specified time. Fed. R. Civ. P. 4(m).  If the plaintiff can show "good cause" for failing to serve the defendant within 120 days, the court shall allow the plaintiff additional time to effect service.  The Tenth Circuit has created a two-step analysis to assist district courts when considering whether to grant a plaintiff's request for additional time:

> The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. In this regard, district courts should continue to follow the cases in this circuit that have guided that inquiry. If good cause is shown, the plaintiff is entitled to a mandatory extension of

time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.

Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995). Excuses for failing to serve a party, such as inadvertence, omission, or neglect, do not constitute good cause. In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996); Cox v. Sandia Corp., 941 F.2d 1124, 1125-26 (10th Cir. 1991). A court must consider a plaintiff's argument as to the existence of good cause and make specific findings on those arguments or the district court's decision to deny additional time to effect service is "merely abuse of discretion and inconsistent with the spirit of the Federal Rules." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir. 1995).

## III.

### A. Failure to Serve the United States

Defendant is an officer of the United States and service must be made on defendant and the United States in compliance with Rule 4(i). Olsen v. Mapes, 333 F.3d 1199, 1201 (10th Cir. 2003). Rule 4(i) provides:

To serve the United States, a party must:

(A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought–or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk–or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a non-party agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i). Rule 4(i)(4) requires the Court to extend the 120 day period provided by Rule 4(m) for a "reasonable time" to cure a plaintiff's failure to "serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee." Fed. R. Civ. P. 4(i)(4). Even if Rule 4(i)(4) does not apply, the Tenth Circuit has recognized that the "complex nature of the requirements" of Rule 4(i) is a factor that a district court should consider when determining whether a permissive extension should be granted under Rule 4(m). Espinoza v. United States, 52 F.3d 838, 842 (10th Cir. 1995).

The parties do not dispute that plaintiff has served Donahoe and the United States Attorney for the Northern District of Oklahoma, and it is also undisputed that plaintiff has not served the United States Attorney General. Plaintiff argues that a second permissive extension of time is warranted, because defendant will not be prejudiced if plaintiff is given additional time to serve the United States. Dkt. # 20, at 15. Plaintiff also argues that a dismissal of his claims would effectively constitute a dismissal with prejudice, because the statute of limitations has run and he would be unable to refile his claims. Id. at 14. Defendant argues that plaintiff has already been granted an extension of time to properly serve the United States and that no further extension is necessary, as the Court has already provided plaintiff with a reasonable time to cure his failure. Dkt. # 22, at 2 n.1.

Plaintiff should be granted a permissive extension of time to properly serve the United States. As the Tenth Circuit has held, the service requirements of Rule 4(i) are complex, and this is a relevant consideration for the Court when faced with a request for a permissive extension of time to serve a defendant. Espinoza, 52 F. 3d at 842. Defendant has not identified any prejudice that will result if plaintiff's request for an extension of time is granted, but plaintiff will be unable to refile

11

his claims if the case is dismissed.  See Fed. R. Civ. P. 4(m) advisory committee notes, 1993 amendments (stating that a permissive extension of time may be "justified . . . if the applicable statute of limitations would bar the refiled action . . . ."). This would result in substantial prejudice to plaintiff and a permissive extension of time to serve defendant is warranted. Defendant's motion to dismiss for failure to serve should not be granted.

**B. Plaintiff Was Not Eligible for FMLA Leave**

To be eligible for FMLA leave, an employee must have been "employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave . . . ." 29 C.F.R. § 825.110(a)(2).  "The determination of whether an employee meets the hours of service requirement . . . must be made as of the date the FMLA leave is to start." Id. § 825.110(d).[7]

Plaintiff argues that the 1,250 hour requirement may be calculated using any one of four methods, and that defendant has selected the fixed-year method. Dkt. # 20, at 7. Plaintiff further argues that the FMLA notices sent by defendant to plaintiff state that defendant uses a fixed-year method for calculating FMLA eligibility. Dkt. # 20, at 8.

The FMLA notices sent by defendant to plaintiff do not state that defendant uses a fixed-year method to determine FMLA eligibility.  Plaintiff is conflating the FMLA's 1,250 hour eligibility requirement with the twelve month period in which an employee is entitled to twelve weeks of leave (hereinafter, "the leave period.")  Once an employee is eligible for FMLA leave, he is entitled to

---

[7]     The version of this regulation in force in 2011 is substantially similar to the version currently in force.  Compare 29 C.F.R. 825.110(d) (2013) ("The determination of whether an employee meets the hours of service requirement . . . must be made as of the date the FMLA leave is to start."), with 29 C.F.R. 825.110(d) (2011) ("The determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months . . . must be made as of the date the FMLA leave is to start.").

twelve weeks of unpaid leave within a twelve month period.  29 C.F.R. § 825.200(a).  The leave period may be defined in one of four ways: calendar year, fixed year, a twelve month period measured forward from the first date of FMLA leave, or  a "rolling" period measured backwards from the date of any FMLA leave usage.  Id. § 825.200(b).  When the FMLA notices show that defendant has selected the fixed year method, they are referring to the method of calculating the leave period; they are not referring to the calculation of the 1,250 hour eligibility requirement.  The notices themselves make this clear.

Preceding the selection of the fixed year method is a statement that, "[i]f your leave does qualify as FMLA leave you will have the following rights while on FMLA leave: . . . ." Dkt. # 15-5, at 2; Dkt. # 15-8, at 2.  The notices then state that, "[y]ou have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as: . . . ."  Dkt. # 15-5, at 2; Dkt. # 15-8, at 2.  Only then is the selection of the fixed-year calculation method made.  Dkt. # 15-5, at 2; Dkt. # 15-8, at 2.  The notices correctly state that qualification for FMLA leave provides an employee with certain rights.  They then explain those rights, which are granted only after qualification as an eligible employee.  One of those rights is to twelve weeks of unpaid leave within a twelve month period.  Because there are four different methods for calculating the leave period, the notices explain which method is used.  This selected method is relevant only to the rights granted upon qualifying; it is not relevant as to whether an employee is qualified -- hence the preceding statement: "If your leave does qualify . . . ." Dkt. # 15-5, at 2; Dkt. # 15-8, at 2.  Whether an employee is qualified is discussed on the previous page on the notice, wherein plaintiff is informed that he has not qualified because he has not met the 1,250 hour requirement.    Dkt. # 15-5, at 1; Dkt. # 15-8, at 1.

13

Plaintiff argues that the 1,250 hour requirement is calculated based on the method selected by an employer for determining the leave period.   Dkt. # 20, at 7.   Plaintiff cites to <u>Barron v. Runyon</u>, 11 F. Supp. 2d 676 (E.D. Va. 1998), to support this argument.[8]   <u>Barron</u> implies, without discussion, that the 1,250 hour calculation is dependant on the method selected by the employer for determining the leave period.   <u>Id.</u> at 680 n.6.   This Court declines to follow <u>Barron</u>.   The better approach is to always calculate the 1,250 hour requirement based on the twelve months that immediately precede the commencement of leave, regardless of which method of calculating the leave period is selected.[9]   This construction is consistent with the manner in which the Supreme Court has described the 1,250 hour requirement.   In the context of determining whether the FMLA was congruent and proportional to its remedial object, the Supreme Court has described an eligible employee as one who has "provided 1,250 hours of service within the last 12 months."   <u>Nev. Dep't of Human Res. v. Hibbs</u>, 538 U.S. 721, 739 (2003).

The statutory language of the FMLA states that an eligible employee must be employed "for at least 1,250 hours of service . . . during <u>the previous</u> 12-month period."   29 U.S.C. § 2611(2)(A)(ii)

---

[8]   Plaintiff also cites <u>Price v. Diamond Servs. Co.</u>, No. CIV-05-1081-M, 2006 WL 3490958 (W.D. Okla. Dec. 6, 2006).   However, <u>Price</u>, like the vast majority of cases examining the 1,250 hour requirement, does not make clear whether the 1,250 hour requirement is being calculated based on the twelve months immediately preceding the commencement of leave or on the previous leave period.   <u>See</u> <u>generally</u> <u>id.</u>

[9]   At least one other district court follows this approach.   <u>See</u> <u>Lyons v. N. E. Indep. Sch. Dist.</u>, Cause No. SA-07-CA-330-OG, 2007 WL 5186146, at *1-2 (W.D. Tex. Oct. 19, 2007) (determining that while the leave year began on July 1, 2006, the eligibility determination should be based on the twelve months prior to August 7, 2006, the date of the requested leave).   Because the vast majority of cases dealing with the 1,250 hour calculation do not state which method is used for determining the leave period, it is impossible to determine exactly how they are calculating the 1,250 hour requirement.   However, the fact that most cases do not state which method is being used may imply that the leave period is unrelated to the 1,250 hour requirement.

14

(emphasis added).  It later states that an eligible employee is entitled to twelve weeks of leave "during <u>any</u> 12-month period . . . ." <u>Id.</u> § 2612(a)(1) (emphasis added).  This difference in language at least implies that the two twelve month periods are not necessarily determined on the same basis.

The regulations promulgated by the Department of Labor are also instructive.  They state that an eligible employee is one who "has been employed for at least 1,250 hours of service during the 12-month period <u>immediately preceding</u> the commencement of leave . . . ."  29 C.F.R. § 825.110 (emphasis added).  The regulations do not use this "immediately preceding" language when explaining the FMLA leave entitlement.  <u>See</u> 29 C.F.R. § 825.200(a) ("FMLA leave entitlement is limited to 12 workweeks of leave during any 12-month period . . . .").  However, the phrase "immediately preceding" is used in 29 C.F.R. § 825.200(c): "Under the method in paragraph (b)(4) of this section, the 'rolling' 12–month period, each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months."  This tends to imply that "immediately preceding" as it is used in section 825.110 also refers to calculating on a "rolling basis" (i.e., looking to the twelve months which immediately precede the commencement of leave for the purposes of a 1,250 hour calculation, regardless of the method chosen for calculating the leave period).[10]  Additionally, the subsection describing the four methods that may be selected states that they are "methods for determining the 12-month period in which the 12 weeks of leave entitlement described in paragraph

---

[10]     This is not to say that the 1,250 hour calculation uses the <u>previous</u> twelve month "rolling" leave period.  Rather, if the "rolling" calculation method is selected, the <u>current</u> "rolling" leave period and twelve month period in which 1,250 hours must be worked will cover the same twelve months.

of this section occurs . . . ."  29 C.F.R. § 825.200(b).  It makes no mention of the methods being

connected in any way to the 1,250 hour requirement.

Three opinion letters of the Wage and Hour Division of the Department of Labor appear to

support this interpretation.[11]  The first states that:

> Where an employer has selected either the calendar year, fixed year, or the 12-month
> period measured forward, it is our position that an employee's eligibility, once
> satisfied, for intermittent FMLA leave for a particular condition would last through
> the entire current 12-month period as designated by the employer for FMLA leave
> purposes.

Wage and Hour Division, Dep't of Labor, Opinion Letter FMLA-112 dated Sept. 11, 2000, 2000

WL 33157366.  This opinion letter suggests that the 1,250 hour requirement is always calculated

based on the twelve months immediately preceding the commencement of leave; if it were calculated

based on the previous leave period, under any of the three listed calculation methods the 1,250 hour

calculation would be the same at any point within the current leave period,[12] and there would be no

need for a special rule for intermittent leave.

The second opinion letter states:

> The 1,250-hour eligibility test may be applied only once during the same 12-month
> FMLA leave year, on the commencement of a series of intermittent absences, if all
> involve the same FMLA-qualifying serious health condition. The employee would
> remain entitled to FMLA leave for that medical reason throughout the 12-month
> period, even if the 1,250-hour calculation is not met at some later point in the
> 12-month period when another related instance of intermittent leave occurs.

---

[11]    Agency opinion letters are entitled to respect only to the extent that they have the power to
persuade.  Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000).

[12]    Since the leave would be taking place during the same "current" period, the "previous"
period in which the 1,250 hour requirement would be calculated would remain constant.

Wage and Hour Division, Dep't of Labor, Opinion Letter FMLA2002-6 dated Dec. 4, 2002, 2002 WL 34420910.  As explained in reference to the previously discussed letter, under the calendar year, fixed year, or twelve month period measured forward method, under plaintiff's interpretation of the statutes and implementing regulations, the previous leave period would remain constant during the entire current leave period, and there would be no need for a rule that the 1,250 hour eligibility test should be applied only once.  This letter is slightly less definitive than the first, in that under the "rolling" calculation, which is not specifically excluded in this letter, it is possible that the 1,250 hour test period could change over time.

The third opinion letter states:

> [T]he rolling 12-month period applied to determining whether an eligible employee's leave entitlement has been exhausted is separate and distinct from testing an employee's eligibility for FMLA leave under the 1,250 hours of service test. The statute at 29 U.S.C. § 2611 and regulations at 29 C.F.R. § 825.110 require that eligibility for FMLA leave must be tested immediately preceding the commencement of leave for each qualifying condition. In other words, the employee maintains eligibility for 12 months forward from the point that it is established. In contrast, entitlement under the rolling 12-month period is measured backward from the date an employee uses any FMLA leave.

Wage and Hour Division, Dep't of Labor, Opinion Letter FMLA2005-3-A dated Nov. 17, 2005, 2005 WL 3401781.  This passage certainly suggests that the Department of Labor believes the 1,250 hour test and the leave period to be unrelated.

Finally, basing the calculation of the 1,250 hour requirement on the previous leave period leads to illogical results.  For example, assume that an employer has selected to use a fixed leave year starting on February 1st and ending on January 31st.  Assume that an employee wishes to take leave on January 1, 2014.  The current leave period runs from February 1, 2013, to January 31, 2014.  Therefore, the preceding leave period would have run from February 1, 2012, to January 31, 2013.

17

Using the construction urged by the plaintiff, the eligibility determination for an employee taking leave on January 1, 2014, would require looking at the hours she worked from February 1, 2012 to January 31, 2013.  It strains credulity to state that a period ending nearly one year before leave commences "immediately precedes" the commencement of leave.  For all of these reasons, this Court determines that the 1,250 hour eligibility test is always calculated based on the twelve months immediately preceding the commencement of leave, irrespective of what method of calculation is used to determine the leave period.

Having established the method in which the 1,250 hour eligibility test will be calculated, it must be determined if plaintiff was an eligible employee within the meaning of the FMLA.[13] Plaintiff claims that he was entitled to FMLA leave on January 19, 20, and 21, 2011.  Dkt. # 2, at 2.  Additionally, plaintiff initially requested FMLA leave beginning on January 4, 2011.  Dkt. # 15, at 3.  The Court finds and concludes that plaintiff was not eligible for FMLA leave on any date between January 4 and January 21, 2011.

---

[13]  Plaintiff has provided evidentiary materials stating that plaintiff took intermittent FMLA leave between May 26, 2010, and January 4, 2011, presumably because of his diabetes.  Dkt. # 20, at 19; see also Dkt. # 22, at 8-9 (stating that plaintiff had taken FMLA leave as recently as December 20, 2010).  However, a new leave period began on January 1, 2011.  Dkt. # 25, at 2; see also Dkt. # 15-5 (showing that USPS has selected the fixed leave year method for calculating the leave period and that the leave period begins "on the 1st full Pay Period of the Calender [sic] Year"); Dkt. # 22-1, at 3 (stating that the leave period begins on "the first full pay period of every calendar year"); Dkt. # 25-1 at 1 (showing that the first full pay period of the 2011 calendar year began on January 1); Dkt. # 15-6 (showing that the first full pay period of the 2011 calendar year began on January 1).  Because a new leave year began prior to plaintiff's requested leave, he must reestablish his eligibility, despite having already qualified for intermittent leave.  See Davis v. Mich. Bell Tel. Co., 543 F.3d 345, 350-51 (6th Cir. 2008); Barron, 11 F. Supp. 2d at 681-83; see also Wage and Hour Division, Dep't of Labor, Opinion Letter FMLA2002-6 dated Dec. 4, 2002, 2002 WL 34420910.

It is undisputed that plaintiff had worked 1,225 hours in the twelve months immediately preceding January 4, 2011.  Dkt. # 15-5, at 1.  Additionally, it is undisputed that, in 2011, plaintiff worked approximately: 7.95 hours the night of January 7; 8.01 hours the night of January 10; and 8.05 hours the night of January 17.  Dkt. # 15-7, at 3-4.  The hours plaintiff worked between the nights of January 4 and January 21, 2010, are also undisputed.  Dkt. # 15-9, at 1-9.[14]

Plaintiff states that he worked forty hours between January 5 and January 19, 2011,  Dkt. # 20, at 20, and that he "worked the nights of January 7, 10, 11, 17 and 18, 2011."  Id.  Defendant disputes the fact that plaintiff worked on the nights of January 11 or 18, 2011, and defendant's records do not provide clock-in and clock-out times for plaintiff on those dates.  See Dkt. # 15-7, at 3-4.  Viewing the evidentiary materials in the light most favorable to the plaintiff, this Court assumes that plaintiff worked approximately eight hours on January 11, 2011, and approximately eight hours on January 18, 2011.  As discussed supra, this Court assumes that plaintiff worked the night of January 21, 2011.  Defendant's records indicate that he worked approximately 7.95 hours on that date.  Dkt. # 15-7, at 5.

The following chart summarizes the information relevant to the calculation of plaintiff's FMLA eligibility:

---

[14]     These hours would "roll off" when the date leave was to commence moved from January 4 to January 21, 2011, as they were no longer worked within twelve months of the date leave was to commence.

Daily Computation of Plaintiff's Eligibility for FMLA Leave (1,250 Hour Requirement)

During the Relevant Time Period[15]

| Date Leave Requested | Hours Worked That Date 2010 | Hours Worked That Date 2011 | Dates Constituting Previous Twelve Months | Hours Worked In Previous Twelve Months[16] |
|---|---|---|---|---|
| 1/4/2011 | 7.92 | 0 | 1/04/2010-1/03/2011 | 1,225.00 |
| 1/5/2011 | 7.93 | 0 | 1/05/2010-1/04/2011 | 1,217.08 |
| 1/6/2011 | 7.97 | 0 | 1/06/2010-1/05/2011 | 1,209.15 |
| 1/7/2011 | 7.96 | 7.95 | 1/07/2010-1/06/2011 | 1,201.18 |
| 1/8/2011 | 7.97 | 0 | 1/08/2010-1/07/2011 | 1,201.17 |
| 1/9/2011 | 0 | 0 | 1/09/2010-1/08/2011 | 1,193.20 |
| 1/10/2011 | 0 | 8.01 | 1/10/2010-1/09/2011 | 1,193.20 |
| 1/11/2011 | 7.94 | 8.00 | 1/11/2010-1/10/2011 | 1,201.21 |
| 1/12/2011 | 7.93 | 0 | 1/12/2010-1/11/2011 | 1,201.27 |
| 1/13/2011 | 7.93 | 0 | 1/13/2010-1/12/2011 | 1,193.34 |
| 1/14/2011 | 8.02 | 0 | 1/14/2010-1/13/2011 | 1,185.41 |
| 1/15/2011 | 7.93 | 0 | 1/15/2010-1/14/2011 | 1,177.39 |
| 1/16/2011 | 0 | 0 | 1/16/2010-1/15/2011 | 1,169.46 |
| 1/17/2011 | 7.93 | 8.05 | 1/17/2010-1/16/2011 | 1,169.46 |
| 1/18/2011 | 8.08 | 8.00 | 1/18/2010-1/17/2011 | 1,169.58 |
| 1/19/2011 | 7.99 | 0 | 1/19/2010-1/18/2011 | 1,169.50 |
| 1/20/2011 | 7.95 | 0 | 1/20/2010-1/19/2011 | 1,161.51 |
| 1/21/2011 | 7.95 | 8.05 | 1/21/2010-1/20/2011 | 1,153.56 |

---

[15]   Source: Dkt. # 15-5, at 1; Dkt. # 15-7, at 3-5; Dkt. # 15-9, at 1-9; Dkt. # 20, at 20.

[16]   Each entry in this column beyond the first is calculated by taking the hours worked in the twelve months preceding the previous day (i.e., the previous row's entry in this column), adding the hours worked the previous day in 2011 (i.e., the preceding row's entry for "Hours Worked That Date 2011"), and subtracting the hours worked the previous day in 2010 (i.e., the preceding row's entry for "Hours Worked That Date 2010").

20

At no time between January 4 and January 21, 2011, the time period in which plaintiff's absences occurred, had plaintiff worked over 1,250 hours in the previous twelve months.  An employee is eligible for FMLA leave only if he has worked at least 1,250 hours in the twelve month period immediately preceding the leave.  29 C.F.R. § 825.110(a)(2).  Therefore, plaintiff was not eligible for FMLA leave at the time of any of his absences.

**C. Defendant Is Not Equitably Estopped from Denying Plaintiff Is Entitled to FMLA Leave**

In his response, plaintiff argues that defendant is equitably estopped from denying that plaintiff is entitled to FMLA leave.  Plaintiff states that he relied on Thomas informing him that he would be eligible for FMLA leave as of the date listed on his notice of eligibility.  Dkt. # 20, at 10.  Plaintiff also states that he relied on the January 5th notice of eligibility, which states that his estimated eligibility date was January 15, 2011.  Id. at 10-11.  Although the contents, and even existence, of the conversation between plaintiff and Thomas is disputed, the Court will assume plaintiff's version of the events to be true, as plaintiff is the non-moving party.  See Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

The traditional elements of estoppel are:

(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.

21

Penny v. Giuffrida, 897 F.2d 1546, 1545-46 (10th Cir. 1990).  The reliance of the party asserting the estoppel must be reasonable.  Hoover v. West, 93 Fed. App'x 177, 182 (10th Cir. 2004);[17] Spaulding v. United Transp. Union, 279 F.3d 901, 909, 911 (10th Cir. 2002).

Application of the estoppel doctrine against the government is disfavored. F.D.I.C. v. Hulsey, 22 F.3d 1472, 1489 (10th Cir. 1994).  In addition to the traditional elements, estoppel against the government for the acts of its agents requires that the asserting party "show affirmative misconduct on the part of the government." Id.  "Affirmative misconduct is a high hurdle for the asserting party to overcome." Id. at 1490.  "[T]he erroneous advice of a government agent does not reach the level of affirmative misconduct." Id.  Further, estoppel based upon the oral, as opposed to written, advice of an agent of the government is disfavored.  Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc., 467 U.S. 51, 65 (1984).  In fact, "the Supreme Court has never upheld a finding of estoppel against the government." Garavaglia v. Comm'r, 521 Fed. App'x 476, 481 (6th Cir. 2013); see also Hulsey, 22 F.3d at 1490 ("It is far from clear that the Supreme Court would ever allow an estoppel defense against the government under any set of circumstances.").

USPS "is part of the Government of the United States." U.S.P.S. v. Flamingo Indus. (USA) Ltd., 540 U.S. 736, 748 (2004); see also 39 U.S.C. § 201 ("There is established, as an independent establishment of the executive branch of the Government of the United States, the United States Postal Service."); Flamingo Indus., 540 U.S. at 744 ("While Congress waived the immunity of the Postal Service, Congress did not strip it of its governmental status."); Kevin R. Kosar, Cong. Research Serv., The U.S. Postal Service's Financial Condition: A Primer 1 n.1 (2013) ("The USPS

_____

[17]     This and other unpublished opinions are cited for their persuasive value. See 10th Cir. R. 32.1(A).

often is mischaracterized as a quasi governmental or private entity. It is neither. The USPS is a government agency that was created by Congress to achieve various public purposes."). The requirement of affirmative misconduct has been applied to estoppel against USPS. See Premo v. United States, 599 F.3d 540, 547 (6th Cir. 2010) (requiring plaintiff to show affirmative misconduct by USPS before estoppel could be applied); DeVaughn v. U.S.P.S., 293 Fed. App'x 276, 282 (5th Cir. 2008) (per curiam) (requiring a showing of affirmative government misconduct to establish estoppel in a suit by a terminated employee against USPS); Hollister v. U.S.P.S., 142 Fed. App'x 576, 577-78 (3rd Cir. 2005) (per curiam) (requiring a showing of affirmative misconduct to establish estoppel against USPS); Rider v. U.S.P.S., 862 F.2d 239, 241 (9th Cir. 1988) (holding that estoppel against USPS requires affirmative misconduct).[18] This Court concludes that, in order to estop USPS, plaintiff must show affirmative misconduct.

Affirmative misconduct requires more than negligence. Rios v. Ziglar, 398 F.3d 1201, 1209 (10th Cir. 2005); see also Home Savs. & Loan Ass'n of Lawton, Okla. v. Nimmo, 695 F.2d 1251, 1261 n.17 (10th Cir. 1982) (McKay, J., dissenting) (suggesting that affirmative misconduct requires "intentional, reckless, or grossly negligent misconduct"), vacated sub nom. Walters v. Home Savs. & Loan Ass'n of Lawton, Okla., 467 U.S. 1223 (1984). It requires "an affirmative act of misrepresentation or concealment of material fact." Bd. of Cnty. Comm'rs of Cnty of Adams v.

---

[18] The Seventh Circuit has held that "affirmative misconduct is not a requirement in the unique situation in which a party seeks to estop the Postal Service from relying on Express Mail insurance limits." Azar v. U.S.P.S., 777 F.2d 1265, 1271 (7th Cir. 1985); see also Gildor v. U.S.P.S., 491 F. Supp. 2d 305, 311 (N.D.N.Y. 2007), on reconsideration in part, 510 F. Supp. 2d 181 (N.D.N.Y. 2007). However, Azar dealt with the estoppel claim of a consumer engaged in a commercial transaction with USPS. 777 F.2d, at 1271. The instant case, involving the estoppel claim of a former employee against the USPS, is distinguishable, and the reasoning of Azar is not applicable.

Isaac, 18 F.3d 1492, 1499 (10th Cir. 1994); see also Mich. Express, Inc. v. United States, 374 F.3d 424, 427 (6th Cir. 2004) (holding that affirmative misconduct "is an act by the government that either intentionally or recklessly misleads the claimant"); Socop-Gonzalez v. I.N.S., 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc) (defining affirmative misconduct as a pattern of false promises or a deliberate lie); United States v. Marine Shale Processors, 81 F.3d 1329, 1350 (5th Cir. 1996) (concluding affirmative misconduct requires "that at minimum the official must intentionally or recklessly mislead the estoppel claimant").   Erroneous advice from a government agent is not affirmative misconduct.  Hulsey, 22 F.3d at 1490; see also Sulit v. Schiltgen, 213 F.3d 449, 454 (9th Cir. 2000) ("Neither the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative misconduct.").   "The party asserting estoppel against the government bears the burden of proving an intentional act by an agent of the government and the agent's requisite intent."  Mich. Express, Inc., 374 F.3d at 427, see also Bartlett v. U.S. Dep't of Agric., 716 F.3d 464, 475 (8th Cir. 2013); Trinidad-Contreras v. Gonzales, 202 Fed. App'x 943, 945 (9th Cir. 2006); Markowski v. Ashcroft, 66 Fed. App'x 374, 375 (3rd Cir. 2003) (per curiam); Marine Shale Processors, 81 F.3d at 1349.

Plaintiff cannot reasonably rely on the January 5th FMLA notice for the proposition that he was eligible for FMLA leave on January 19, 2011.  The notice states that his "ESTIMATED DATE OF ELIGIBLE [sic]" is January 15, 2011.  Dkt. # 15-5, at 1.  It is unreasonable for plaintiff to rely on an estimate -- and the date is clearly marked as such -- especially when plaintiff missed at least five days of work between January 5 and January 19, 2011.  Nor could plaintiff reasonably rely on the notice's supposed explanation that the fixed-year method was used to calculate FMLA eligibility; as previously discussed, the notice states only that a fixed-year method is used to

calculate the leave year, not that a fixed-year method is used to calculate FMLA eligibility. Because plaintiff cannot show that he reasonably relied on the notice, he cannot invoke the doctrine of estoppel based upon the notice itself.

Nor can plaintiff reasonably rely on Thomas's advice. First, the advice was oral, and reliance based upon a government agent's oral statements is disfavored. Heckler, 467 U.S. at 65. Second, the alleged statements by Thomas all refer to the January 5th notice and its contents. Dkt. # 20, at 19-20. Plaintiff could not reasonably rely on Thomas's oral advice given the contents of the written document she referenced, which state that the eligibility date was only an estimate. Again, this is especially true when plaintiff knew that he had missed at least five days of work between the date of the notice and his estimated date of eligibility. Because plaintiff could not reasonably rely on Thomas's advice, he cannot invoke the doctrine of estoppel based upon the advice.

Even assuming plaintiff could reasonably rely on the notice or Thomas's advice, he has failed to meet his burden of demonstrating affirmative misconduct on behalf of the government. The only misconduct alleged is that Thomas provided erroneous advice to plaintiff regarding his eligibility for FMLA leave. Mere erroneous advice is insufficient to constitute affirmative misconduct. Hulsey, 22 F.3d at 1490. Plaintiff has produced no evidentiary materials tending to show that Thomas's alleged statement was anything beyond mere negligence and, therefore, fails to meet his burden of "proving an intentional act by an agent of the government and the agent's requisite intent." Mich. Express, Inc., 374 F.3d at 427.

**D. Because Plaintiff Was Not Eligible for FMLA Leave, Defendant Has Not Violated the FMLA**

Defendant contends that plaintiff may not prevail on either an interference or retaliation theory of recovery under the FMLA. Dkt. # 15, at 9. There are two theories for recovery on FMLA claims: interference theory and retaliation theory. Smith v. Diffee Ford-Lincoln-Mercuy, Inc., 298 F.3d 955, 960 (10th Cir. 2002). Plaintiff's complaint does not specifically identify which theory or theories he is pursuing. See generally Dkt. # 2. "To succeed on an interference claim, an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." Brown v. ScriptPro, LLC, 700 F.3d 1222, 1226 (10th Cir. 2012). "A prima facie case of retaliation requires a showing that (1) the employee engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there is a causal connection between the protected activity and the adverse action." Id. at 1229. Because plaintiff's absences were not FMLA eligible, plaintiff was not entitled to FMLA leave, and plaintiff did not engage in a protected activity. Therefore, plaintiff cannot prevail under either theory of recovery.[19] Defendant is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendant Patrick R. Donahoe's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Brief in Support (Dkt. # 15) is **denied** as

---

[19]     Because plaintiff was not FMLA eligible, defendant's argument that plaintiff, even if he were eligible, could not prevail under either theory of recovery need not be addressed.

to dismissal for failure to serve and **granted** as to summary judgment.  A separate judgment is entered herewith.

IT IS FURTHER ORDERED that Defendant's Motion for Hearing (Dkt. # 27) is **moot**.

DATED this 9th day of January, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE